UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

BENNY J. YOUNG                                    CIVIL ACTION NO. 08-cv-0356

VERSUS                                            JUDGE STAGG

WARDEN, ALLEN CORRECTIONAL                        MAGISTRATE JUDGE HORNSBY
CENTER

## REPORT AND RECOMMENDATION

**Introduction**

A Caddo Parish jury convicted Benny J. Young ("Petitioner") of second-offense possession of marijuana, and Petitioner was adjudicated a third-felony offender based on prior convictions for aggravated battery and possession of a Schedule II CDS. He was sentenced to seven years at hard labor. The conviction and sentence were affirmed on direct appeal. State v. Young, 895 So.2d 753 (La. App. 2d Cir. 2005). Petitioner also filed in state court applications for post-conviction relief. He now presents a petition for federal habeas corpus relief. It is recommended, for the reasons that follow, that the petition be denied.

**Background Facts**

Shreveport narcotics agent Ben Raymond stopped Petitioner's Chevrolet Cavalier in the Cedar Grove neighborhood just after midnight in the early moments of September 11, 2001. Raymond had witnessed the driver commit traffic violations. He began writing Petitioner a traffic citation and, noticing that Petitioner was very nervous, called for a K-9 unit.

Officer Cain and his dog, Berry, arrived. While doing an initial safety inspection of the car, Cain saw marijuana seed on the driver's seat. Berry, a trained and certified drug-detection dog, "hit" on the car in several places. Officer Cain told Agent Raymond that he received a positive alert, so he intended to put Berry in his car and search the Cavalier.

Petitioner then rushed to the car, opened the door, hit the door lock, and slammed the door of the car. Agent Raymond and another officer quickly subdued Petitioner, removed his car keys from his front pocket, and gave the keys to Officer Cain. A search of the car led to the discovery of a partially smoked "blunt" and a small amount of loose vegetable matter, all of which field tested positive for marijuana. Lab tests verified the presence of marijuana in the car. The officers also found a .22 caliber handgun under the seat of the car. Petitioner was tired and acquitted on a felon-in-possession charge, but in a separate trial he was convicted of possession of marijuana, second offense.

**Motion to Suppress**

Defense counsel filed a motion to suppress on the grounds of an unlawful search. A hearing was held, and the motion was denied. The issue was pressed on direct appeal, and the state appellate court affirmed the trial court's ruling, citing the plain view doctrine. State v. Young, 895 So.2d at 757-58. Petitioner also pursued the issue by post-conviction application.

A federal habeas court is generally barred from reviewing Fourth Amendment claims. Stone v. Powell, 96 S.Ct. 3037 (1976). In Stone, the Court held that "where the State has

provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 96 S.Ct. at 3037.

To satisfy the "opportunity for full and fair litigation" requirement, the state need only provide the processes whereby a defendant can obtain full and fair litigation of a Fourth Amendment claim. Stone bars federal habeas consideration of that claim whether or not the defendant employs those available processes. Janecka v. Cockrell, 301 F.3d 316, 320 (5th Cir. 2002).

Petitioner not only had the opportunity but actually litigated his Fourth Amendment claims fully in the state court system. He is not entitled to seek habeas relief based on those arguments.

**Brady Claim**

Petitioner argued on post-conviction application that the State violated the requirements of Brady v. Maryland, 83 S.Ct. 1194 (1963) because a videotape of the traffic stop and arrest was erased by the Shreveport Police Department. Agent Raymond testified at a suppression hearing several months before the trial. Defense counsel asked him then if his car had the ability to make video recordings. Agent Raymond explained that the event was recorded using the mobile camera, but the tapes then used (digital recording devices are now used by the City) were kept only six months and then erased if they had not been placed

into evidence. Raymond said that he did not place the tape into evidence, so he doubted the recording still existed. Tr. 15-16.

Raymond testified at trial that a supervisor removed the videotape from his patrol car at the end of each shift. If the tape did not hold what the officer considered to be of evidentiary value, the tape was placed in a video room and held for approximately 60 days to see if the tape would be requested by the officer or the courts for any purposes. Otherwise, the tape would be erased and re-used.

Raymond said that this practice was employed because of the volume of tapes required. Every Shreveport patrol car had a tape that was changed three times a day, once after each officer shift, and it would be almost impossible to save such a large volume of tapes. Agent Raymond testified that he did not consider the tape of this arrest to be what was then considered of evidentiary value. He said he made five to ten traffic stops and three or four arrests on a routine night, with all of the arrests often similar to this one. The arrests usually involved the recovery of drugs or guns. There was nothing about this case that made it so outstanding that Raymond believed the tape needed to be kept as evidence. Tr. 157-59.

To establish a <u>Brady</u> claim a petitioner must establish that the evidence was (1) suppressed, (2) favorable, and (3) material. <u>Wright v. Quarterman</u>, 470 F.3d 581, 591 (5th Cir. 2006). Evidence is not "suppressed" if the petitioner either knew or should have known of the essential facts that would have permitted him to take advantage of any exculpatory evidence. <u>West v. Johnson</u>, 92 F.3d 1385, 1399 (5th Cir. 1996). Evidence is material if it

"could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Kyles v. Whitley, 115 S.Ct. 1555, 1566 (1995). In short, a petitioner must show a "reasonable probability of a different result." Banks v. Dretke, 124 S.Ct. 1256, 1276 (2004).

Petitioner attempted to turn the absence of the video recording into a Brady claim when he filed his post-conviction application. The trial court judge denied relief, reasoning that Petitioner's claims of tampering or intentional destruction of favorable evidence was conclusory and not substantiated by any particular facts. Tr. 487. The state appellate court observed that Petitioner "has offered nothing in support of his allegations of altered video records or other evidentiary tampering, and the trial court's ruling is correct." Tr. 506.

Petitioner may not obtain habeas relief on this claim unless he demonstrates that the state court's adjudication was contrary to or an unreasonable application of Brady or was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d). Petitioner has merely presented to this court copies of the same briefs that he filed in the state courts. He has done nothing, beyond offering his speculation, to show that the video recording would have been exculpatory or favorable. There were also no facts about the erased video that was denied to the defense. They were made aware of the circumstances surrounding it several months before trial. And "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." Arizona v. Youngblood, 109 S.Ct. 333,

337 (1988). See also Illinois v. Fisher, 124 S.Ct. 1200 (2004). Petitioner has not offered any specific facts that would cause the court to question the state court's resolution of this claim, so habeas relief is not permitted.

**False Testimony**

Petitioner joins with this claim an argument that Agent Raymond gave perjured testimony regarding whether Petitioner's female passenger at the time of the traffic stop was a prostitute. Raymond testified that Petitioner had a female passenger at the time of the traffic stop. Raymond said he believed the woman to be a prostitute because he saw her every night flagging down cars on Thornhill Avenue. Neither she nor Petitioner knew each other's name or occupation. Agent Raymond told the woman that she was free to leave, and she walked off. Tr. 148-49. When defense counsel revisited the issue on cross-examination, he asked Raymond if he knew whether the woman had any convictions for prostitution. Raymond said that he did not, and his assumption was based on his knowledge and experience working in the area, the time of night, the clothing the woman wore, and other factors. Tr. 163-64.

Petitioner appears to argue that Raymond committed perjury when he said he believed the woman was a prostitute and then admitted that he did not know of any convictions she had for that crime. The Due Process Clause of the Fourteenth Amendment forbids the prosecution to knowingly to use, or fail to correct, perjured testimony. Giglio v. U.S., 92 S.Ct. 763, 766 (1972); Napue v. Illinois, 79 S.Ct. 1173, 1178-79 (1959). To prove that the

prosecution has denied him due process of law by relying on perjurious testimony, a petitioner must prove that (1) a witness for the state testified falsely; (2) the state knew the testimony was false; and (3) the testimony was material. Knox v. Johnson, 224 F.3d 470, 477 (5th Cir. 2000), citing Giglio, supra. There is no indication that Raymond gave false testimony on this point. Not all prostitutes have convictions, and Raymond explained his characterization of the female passenger with particular facts. The state court's rejection of this claim does not permit habeas relief under the demanding standard of Section 2254(d).

Petitioner also points to Agent Raymond's testimony about his conversation with Petitioner and the woman at the time of the stop. Raymond testified that he asked Petitioner to exit the car and come speak to him at the rear of the car. Petitioner could not give any information about the female occupant, and Raymond was curious about her, so he left Petitioner at the rear of the car with another officer. Raymond testified: "And I went and spoke with her briefly and asked her the same basic questions, where are you going, who are you with, that type of thing." Tr. 162-63. Petitioner makes the leap from this testimony to the conclusion that Raymond must have been speaking to the passenger through an open window of the car. He suggests that if a window or windows were open, his alleged action in attempting to lock the doors of the car after the dog alerted would have been fruitless. He attempts to build from this that the police lied about Petitioner locking the car doors.

This claim is also meritless. Raymond did not say that any windows of the car were open. He said he went and spoke with the woman, but he did not say whether he did so

through an open window, after the woman opened the door, through a barely-open window, or otherwise. The woman may have rolled the window down to speak to Raymond and then rolled it back up. We do not know because Raymond did not testify about whether the window was up or down. Therefore, Petitioner's assertion that there was some form of perjury on this point is baseless.

**Ineffective Assistance of Trial Counsel**

Petitioner filed in the state court two applications for post-conviction relief. He asserted claims of ineffective assistance of counsel in each application. The first application, filed in 2005, asserted a claim that trial counsel was ineffective "for allowing unprofessionalism to be construed during a proceedings during his trial." Petitioner generally alleged that the outcome of the trial would have been different had counsel "done specific performance and duties as mandated under the professional ethics code under the guidelines of his specific performance." Tr. 358, 365. The memorandum in support of the application provided no additional factual context for the asserted shortcomings of counsel. Tr. 377-78.

The trial court judge quite reasonably denied the claim as "conclusory." Tr. 414. The state appellate court held that the trial court "correctly denied" the ineffective assistance claim. Tr. 446.

Petitioner returned in 2006 with a second post-conviction application. Tr. 507. It was in that second application that he set forth the several specific grounds of ineffective assistance that he now asserts in this federal petition. Tr. 527-35. As a matter of fact,

Petitioner's federal petition's assignment of an ineffective assistance of trial counsel claim refers, in support, to a photocopy of the cited pages of the second post-conviction application. The claims argued therein are that the suspected prostitute-passenger, who told Agent Raymond she did not know Petitioner's name or occupation, was actually Petitioner's "niece sister-in-law." Petitioner claims that his trial counsel spoke with the woman before trial, she told him "the true facts" about the arrest, but counsel said that he would not need her for trial. Petitioner also faults counsel for not discovering the videotape and preserving it before the police erased it, for not promptly returning his telephone calls, not filing a bill of particulars, basing the motion to suppress on a statutory provision regarding searches rather than the Louisiana Constitution, not opposing a motion to sever the gun and drug charges, and not filing a motion to quash the second offense marijuana bill of information. Petitioner makes a number of other conclusory claims, essentially faulting every step or decision made by counsel during the pretrial and trial proceedings. None of the asserted claims appears to have any particular merit but, for the reasons that follow, the claims should be denied as procedurally barred.

Louisiana Code of Criminal Procedure article 930.4 provides a number of prohibitions against successive post-conviction claims. Subsection (D) permits a successive application to be dismissed if it fails to raise a new or different claim. Subsection (E) states that the successive application may be dismissed even if it does raise a new or different claim but the claim was inexcusably omitted from a prior application. Subsection (F) provides that the

court, if relying on these provisions, must first order the petitioner to state reasons for his failure.

The trial court denied the second post-conviction application's claim of ineffective assistance of counsel because it was inexcusably omitted from the first application. Tr. 560. The state appellate court denied a writ application, even though the trial court did not give Petitioner direct notice that it was considering dismissal based on the procedural bar. The appellate court found that the notice requirement of the rule and due process had been satisfied because the district attorney's response to the application had raised the procedural objection and, despite an opportunity to do so, Petitioner did not offer reasons for his failure to earlier raise the claims. Tr. 620. The Supreme Court of Louisiana denied writs without comment. Tr. 702.

The State attacks the Strickland claims on the merits but has not raised a procedural bar defense in this court. But a federal court may raise the procedural default sua sponte and apply that default as a bar to further litigation of a claim. Magouirk v. Phillips, 144 F.3d 348, 358 (5th Cir. 1998). The court's exercise of its discretion to raise the defense should be founded on the principles of comity and judicial economy that undergird the procedural default doctrine. Id.

The undersigned hereby raises the procedural default bar. The doctrine of comity and the current habeas corpus statutes demand deference to state court decisions of constitutional issues. The related exhaustion doctrine is designed to afford state courts a first opportunity

to address claims of constitutional violations before the federal courts review the proceedings. Petitioner, by not presenting the Strickland claims at issue in his first application as required by state law, committed a procedural failure that resulted in no state court decision on the merits of the Strickland claims. Thus, there is no state court decision to which this court could defer under Section 2254(d), and the federal court would have to decide the merits of the claims on a de novo basis. Lefevre v. Cain, 586 F.3d 349, 352-53 (5th Cir. 2009), cert. denied, 2010 WL 1006100 (March 22, 2010) and Jones v. Jones, 163 F.3d 285, 299-300 (5th Cir.1998) (reviewing de novo petitioner's ineffective assistance of counsel claims that were raised in state court, but not adjudicated on the merits). The result is that Petitioner's procedural violation would be overlooked in the end and actually earn Petitioner a reward of federal de novo review (unless this court raises the procedural bar). That result should not be encouraged. The best exercise of the court's discretion in these circumstances is to raise the procedural bar issue and encourage compliance with state court procedural requirements.

The next step is to determine whether the procedure-based denial of the Strickland claims does operate as a valid bar. A federal court will find a claim procedurally barred if the state court judgment rests on a state law ground, substantive or procedural, that is both *independent* of the merits of the federal claim and an *adequate* basis for the court's decision. Harris v. Reed, 109 S.Ct. 1038, 1042 (1989). This doctrine applies to bar federal habeas, for example, when a state court declines to address a prisoner's federal claims because the

prisoner has failed to meet a state procedural requirement such as a time limit for briefing or a bar on successive applications. Coleman v. Thompson, 111 S.Ct. 2546, 2554 (1991); Coleman v. Quarterman, 456 F.3d 537, 542 (5th Cir. 2006).

To fulfill the *independent* requirement, the last state court that issues a reasoned judgment must "clearly and expressly" indicate that its judgment rests on the state procedural bar. Ylst v. Nunnemaker, 111 S.Ct. 2590 (1991). The state appellate court's decision definitely satisfies that requirement. The procedural rule is *adequate* if it is one that the state courts strictly or regularly follow, and one that is applied evenhandedly to the vast majority of similar claims. Amos v. Scott, 61 F.3d 333, 339 (5th Cir. 1995); Glover v. Cain, 128 F.3d 900, 902 (5th Cir. 1997). There is a presumption of adequacy and the burden is on the petitioner to overcome it. Amos, supra. Several courts have recognized Article 930.4 as an adequate state procedural ground. See, e.g., Hymes v. Cain, 2010 WL 924288, *8 (E.D. La. 2010); Jones v. Warden, 2010 WL 817311, *18 (W.D. La. 2010); and Newman v. Rader, 2009 WL 3860725, *3 (M.D. La. 2009). Accordingly, the court finds that the procedural basis for the state court's denial of the Strickland claims was both independent and adequate.

A procedural default may be excused only upon a showing of "cause" and "prejudice." Coleman v. Thompson, 111 S.Ct. at 2564 (1986). The "cause" standard requires the petitioner to show that some objective factor external to the defense impeded his efforts to raise the claim in state court. Murray v. Carrier, 106 S.Ct. 2639 (1986). As for the second factor, a "showing of pervasive actual prejudice can hardly be thought to constitute anything

other than a showing that the prisoner was denied 'fundamental fairness' at trial." Murray, 106 S.Ct. at 2648.

Petitioner has not been called on to this point to articulate cause for his failure. Notifying Petitioner of that requirement by means of this Report and Recommendation satisfies the requirement of a notice and reasonable opportunity to oppose application of the procedural bar. Magouirk, 144 F.3d at 359. The undersigned sometimes affords the notice and opportunity to demonstrate cause and prejudice before issuing a recommendation, but it is difficult to imagine Petitioner demonstrating cause in this case. He asserted a generic ineffective assistance claim in his first application, so he was plainly aware of and able to allege a Strickland claim. But, for whatever reason, Petitioner failed to include the variations of the claim that he chose to include in his second application. It appears that all of the facts supporting the claims in the second application were known to Petitioner at the time of the pretrial and trial events in which he participated and witnessed, so there is no conceivable explanation that would lawfully excuse Petitioner for not including the claims in his first application. It is recommended, therefore, that the ineffective assistance claims asserted in this federal petition be dismissed as procedurally barred, absent an unanticipated articulation of cause and prejudice in Petitioner's objections.

**Ineffective Assistance of Appellate Counsel**

Petitioner also contends that his appellate counsel was ineffective. The claim is subject to the same procedural bar discussed above. The last reasoned state court decision

Page 13 of 16

on the claim specifically held that the claim was successive and barred by Article 930.4. Tr. 632. As discussed briefly below, the claim also lacks merit.

On appeal, effective assistance of counsel does not mean counsel who will raise every non-frivolous ground of appeal available. It means counsel who will perform in a reasonably effective manner. Green v. Johnson, 160 F.3d 1029, 1043 (5th Cir. 1998). To show prejudice, when a petitioner claims that counsel omitted an issue that should have been argued, the petitioner must show that had the issue been raised there was a reasonable probability that he would have won on appeal. Smith v. Robbins, 120 S.Ct. 746, 764 (2000); Moreno v. Dretke, 450 F.3d 158, 168 (5th Cir. 2006).

Petitioner's first complaint about appellate counsel is that he did not brief a claim of ineffective assistance of trial counsel based on a failure to file a motion to quash the habitual offender charge because of defects in a 1998 guilty plea to possession of marijuana, second offense. Petitioner argues that appellate counsel did not list the issue in the assignment of errors, causing the state appellate court to not address the issue. The state appellate court did, however, squarely address the claim that the 1998 guilty plea was defective for the reasons argued by Petitioner. It found the arguments were lacking. State v. Young, 895 So.2d at 758. Thus, any argument of ineffective assistance of counsel based on a failure to raise those arguments could not have merit.

Petitioner next argues that appellate counsel, in his argument regarding the trial court's denial of the motion to suppress, attached only a partial transcript of the proceedings.

Petitioner argues that counsel should have known that an appellate court may consider not only the evidence produced at the suppression hearing but also evidence from the trial. Petitioner says the omission was prejudicial "because it denied the defendant a review based on a complete record." Petitioner does not identify a single page of transcript or even a sentence of testimony that might have influenced the result of the appeal of the search and seizure issue but was omitted from the appellate briefing and record. The record showed that there was reasonable suspicion to make the initial traffic stop. A dog alert during the reasonable scope of the stop provided probable cause for a search of the car, and Officer Cain's observation of marijuana seed in plain view gave additional grounds to search. Petitioner has not pointed to any part of the record that appellate counsel could have submitted to the appellate court that might have changed the result on this issue.

Finally, Petitioner argues that appellate counsel confined his search and seizure arguments to the United States Constitution, when he should have known that the Louisiana Constitution affords greater protection regarding such matters. Petitioner does not point to any Louisiana jurisprudence that would have yielded a different result in this case. Furthermore, the state appellate court analyzed the search claim with some citation of federal decisions but with the overwhelming majority of its analysis being based on state court decisions. See State v. Young, 895 So.2d at 757-58. There is no merit to this final claim.

Accordingly,

**IT IS RECOMMENDED** that the petition for writ of habeas corpus be **denied**, and that Petitioner's complaint be **dismissed with prejudice**.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within seven (7) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 26th day of April, 2010.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE